UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THE EDMONDS GROUP, L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV2317 HEA |
| ) | |
| PLATINUM PROTECTION, L.L.C., ) | |
| ) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Motion for Summary Judgment, [Doc. No. 20]. Defendant opposes the Motion. For the reasons set forth below, the Motion is granted.

**Facts and Background**

Plaintiff filed this action in the Circuit Court for the City of St. Louis, Missouri on October 22, 2010. Defendant removed the matter to this Court based on the Court's diversity of citizenship jurisdiction.

Plaintiff's Amended Complaint alleges the following:

Defendant entered into three (3) consulting agreements with Plaintiff under which Plaintiff provided consulting services to Defendant. These agreements were dated June 5, 2009, August 1, 2009 (Amendment), and September 1, 2009 (collectively referred to as the "Prior Agreements").

On April 29, 2010, Plaintiff and Defendant entered into a Termination Agreement, terminating the Prior Agreements, and setting forth a schedule to compensate Plaintiff for its efforts and services rendered to Defendant.

On September 30, 2010, Defendant closed on a financing transaction with Boathouse Capital, L.P., which provided for a loan in the amount of $7,500,000 (the "Boathouse Loan Transaction").

Pursuant to the terms of the Termination Agreement and Prior Agreements, Plaintiff was entitled to a fee for services and rights arising out of the Boathouse Loan Transaction.

On October 8, 2010, Plaintiff and Defendant entered into a Release Agreement ("Release Agreement"). To induce Plaintiff to enter into the Release Agreement, Andrew Kindfuller, Chief Executive Officer of Platinum, sent Henry Edmonds of Edmonds Group an email on October 13, 2010 attaching the Release Agreement and promising that "[u]pon receipt of the [signed] release, we will wire $150,000 to your attention at" Plaintiff's bank account.

In reliance upon this statement by Mr. Kindfuller, Plaintiff signed and returned the Release Agreement to Defendant.

Pursuant to the Release Agreement, Defendant agreed to pay Plaintiff One Hundred and Fifty Thousand Dollars ($150,000.00) in payment for all of

Plaintiff's services, rights and fees due and owing under the Termination Agreement and Prior Agreements for the Boathouse Loan Transaction (the "Platinum Payment").

Plaintiff alleges that conditions precedent, if any, have been satisfied and Defendant was to pay the Platinum Payment to Plaintiff. Plaintiff further alleges that despite repeated demands, Defendant has failed and refused to pay Plaintiff the Platinum Payment in the amount of One Hundred and Fifty Thousand Dollars ($150,000.00) in breach of the Release Agreement. Plaintiff seeks this payment and further, allegedly pursuant to the Release Agreement, the prevailing party is entitled to recover reasonable costs and attorney's fees.

Under the Termination Agreement, Platinum was to pay TEG a fee "of 6% for Equity; 4% for Subordinated Debt; and 2% for first $25 Million of Senior Debt, 1% for additional Senior Debt" for the financing obtained by Platinum from certain lenders listed on the schedules attached to the Termination Agreement ("The Payment").

On July 15, 2010, Defendant executed a commitment letter with Boathouse in the amount of $7.5 million. Subsequently, on September 30, 2010, the loan closed and financing in the amount of $7.5 million was provided by Boathouse to Defendant (the "Boathouse Loan"). Boathouse is a lender identified in Schedule

B of the Termination Agreement. Plaintiff therefore alleges that the payment due and owing under the Termination Agreement is equal to or greater than One-Hundred and Fifty Thousand Dollars ($150,000.00) to discharge Defendant's obligations under the Termination Agreement.

Plaintiff further alleges that all conditions precedent, if any, have been satisfied and Defendant is obligated to pay Plaintiff its fee from the Boathouse Loan Transaction under the terms of the Termination Agreement.

Defendant has not paid Plaintiff the sum allegedly due and owing under the terms of the Termination Agreement.

Plaintiff further alleges that in order to induce TEG to enter into the Release Agreement, Kindfuller represented in an e-mail on October 13, 2010 to Edmonds that Defendant would wire Plaintiff $150,000 to satisfy Defendant's obligation under the April 29, 2010 Termination Agreement arising from the Boathouse Loan Transaction, if Plaintiff signed and returned the Release Agreement. Specifically, Kindfuller represented: "I am attaching a release form [the Release Agreement] to be signed, scanned and sent back. Upon receipt of the release, we will wire $150,000 to your attention at" Plaintiff's bank account. Defendant did not wire $150,000 to Plaintiff.

Plaintiff now moves for summary judgment.

## **Discussion**

The standard for summary judgment is well settled. In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005); *Littrell v. City of Kansas City, Mo.*, 459 F.3d 918, 921 (8th Cir. 2006). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Littrell*, 459 F.3d at 921. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)."

*Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003).

"The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and give effect to that intention." *J.E. Hathman v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo.1973). If the contract is unambiguous, then the intent of the parties is to be gathered from the contract alone, and "any extrinsic or parole evidence as to the intent and meaning of the contract must be excluded from the court's review." *Vidacak v. Okla. Farmers Union Mut. Ins. Co.*, 274 S.W.3d 487, 490 (Mo.Ct.App.2008). Where a contract is ambiguous and unclear, however, "a court may resort to extrinsic evidence to resolve an ambiguity." *Burrus v. HBE Corp.*, 211 S.W.3d 613, 616 (Mo.Ct.App.2006). "A contract is ambiguous when it is reasonably susceptible to different constructions." *Id*. (internal quotation marks omitted). Whether a contract is ambiguous is a question of law. *Edgewater Health Care, Inc. v. Health Sys. Mgmt., Inc.*, 752 S.W.2d 860, 865 (Mo.Ct.App.1988). If a contract is ambiguous, "then a question of fact arises as to the intent of the parties, and thus it is error to grant summary judgment." *Essex Dev., Inc. v. Cotton Custom Homes, L.L.C.*, 195 S.W.3d 532, 535 (Mo.Ct.App.2006). See *Lafarge North America, Inc. v. Discovery Group L.L.C.* 574 F.3d 973, 979 (8th Cir. 2009).

Accordingly, pursuant to Missouri law, the Court must enforce a contract

"as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous." *Contract Freighters, Inc. v. J.B. Hunt Transp., Inc.*, 245 F.3d 660, 663 (8th Cir.2001) (quoting *Farmland Indus., Inc. v. Frazier-Parrott Commodities*, 111 F.3d 588, 590 (8th Cir.1997)).

> When faced with conflicting or ambiguous specific and general provisions in a contract, a court should enforce the more specific of the terms. *Five Star Quality Care-MO, L.L.C. v. Lawson*, 283 S.W.3d 811, 815 (Mo.Ct.App.2009). The terms of a contract should be read as a whole to determine the intent of the parties, *TAP Pharm. Prods., Inc. v. St. Bd. of Pharmacy*, 238 S.W.3d 140, 143 (Mo.2007), and "[t]he test for ambiguity is whether the disputed language is reasonably susceptible of more than one meaning when the words are given their plain meaning as understood by an average person." *Rabius v. Brandon*, 257 S.W.3d 641, 645 (Mo.Ct.App.2008) (quoting *Lacey v. St. Bd. of Registration for the Healing Arts*, 131 S.W.3d 831, 839 (Mo.Ct.App.2004)).

*Dubinsky v. Mermart, LLC*, 595 F.3d 812, 816 (8th Cir. 2010).

Plaintiff initially moves for summary judgment on the grounds that the parties entered into a unilateral agreement by virtue of the offer set forth in the October 13, 2009 email, which offered $150,000 for execution of the Release Agreement. Plaintiff accepted the offer by executing and returning the Release Agreement.

> "A unilateral contract is a contract in which performance is based on the wish, will, or pleasure of one of the parties." *Cook v. Coldwell Banker*, 967 S.W.2d 654, 657[3] (Mo.App.1998). The promisor receives no promise in return as consideration for the original

> promise. *Id*. at 657[4]. The contractual relationship arises when the conduct of the parties supports a reasonable inference of a mutual understanding that one party perform and the other party compensate for such performance. *Commercial Lithographing Co. v. Family Media, Inc*., 695 S.W.2d 936, 939[3] (Mo.App.1985). "An offer to make a unilateral contract is accepted when the requested performance is rendered." *Cook*, 967 S.W.2d at 657[6]. The offer cannot be revoked where the offeree has made substantial performance. *Id*. at 657.

*Ketcherside v. McLane,* 118 S.W.3d 631, 635 (Mo.App.2003). There is no dispute that Defendant sent the email offering to pay the $150,000 upon execution of the Release Agreement.

Defendant argues that a condition precedent to its performance under the Termination agreement was the completed funding by Boathouse. That is, its obligation to pay Plaintiff was conditioned on it receiving the $7.5 million in financing committed by Boathouse. Defendant argues that, based on the assumption that Boathouse would meet its obligation to fund the entire $7.5 million commitment, Plaintiff and Defendant agreed in the Release Agreement that $150,000 would be the correct amount under the Termination Agreement.

What Defendant overlooks in its argument is the existence of its unilateral agreement set out in its email to Plaintiff, which contained no conditions precedent. The clear, unambiguous terms of Defendant's offer was that if Plaintiff executed the Release Agreement, it would pay Plaintiff the $150,000. Moreover,

it is reasonable to conclude that a contract was formed.  There is no dispute that the transaction between Defendant and Boathouse was closed prior to the unilateral contract's acceptance.  Plaintiff promptly executed the Release Agreement and returned it to Defendant, as specifically provided in the email.  The subsequent issues which Defendant experience with Boathouse have no bearing on its obligation to pay Plaintiff under the terms Defendant itself set out in its email.

Defendant also argues that it should be excused from its obligation to pay Plaintiff based on the "commercial frustration doctrine."   The doctrine of commercial frustration grew out of demands of the commercial world to excuse performance under contracts in cases of extreme hardship. *Kassebaum v. Kasselbaum*, 42 S.W.3d 685, 699 (Mo.App. 2001).  Under the doctrine of commercial frustration, if the occurrence of an event, not foreseen by the parties and not caused by or under the control of either party, destroys or nearly destroys the value of the performance or the object or purpose of the contract, then the parties are excused from further performance.  *Id*. If, on the other hand, the event was reasonably foreseeable, then the parties should have provided for its occurrence in the contract.  *Werner v. Ashcraft Bloomquist, Inc.*, 10 S.W.3d 575, 577 (Mo.App. E.D.2000).  The absence of a provision in the contract providing for such an occurrence indicates an assumption of the risk by the promisor.  *Id.*  In

determining foreseeability, courts consider the terms of the contract and the circumstances surrounding the formation of the contract. *Id*. at 577–578. The doctrine of commercial frustration should be limited in its application so as to preserve the certainty of contracts. *Id*. at 578; *Adbar, L.C. v. New Beginnings C-Star,* 103 S.W.

As a general matter, if a party to a contract wants its performance to be excused upon the happening of an event arising after the formation of a contract, which event reasonably could be foreseen at the time of contracting, that party must expressly provide for that contingency in the contract, even if that event would render performance impossible, impractical, or commercially-frustrated. See *Clean Uniform Co. St. Louis v. Magic Touch Cleaning, Inc*. 300 S.W.3d 602, 608 (Mo.App. E.D.,2009); *Minor v. Rush*, 216 S.W.3d 210, 213–14 3d (Mo.App.2007); *Adbar*, 103 S.W.3d at 801–02; *Missouri Dept. of Transp. ex rel. v. Safeco*, 97 S.W.3d 21, 35 (Mo.App.2002); *Werner*, 10 S.W.3d at 577–78. See also 30 Richard A. Lord, Williston on Contracts §§ 77:11, 77:54, 77:95 (4th ed.2004); 17A Am.Jur.2d Contracts §§ 653, 659 (2004). An event that reasonably could have been anticipated at the time of contracting does not excuse the obligor's performance under these doctrines because if the event reasonably could be foreseen and the contract does not provide for performance to be excused if the

event occurs, the Court presumes that the parties intended the obligor to assume this risk. *Adbar*, 103 S.W.3d at 801; *Werner*, 10 S.W.3d at 577. See also 17A Am.Jur.2d Contracts, supra, §§ 653, 659; Lord, supra, §§ 77:54, 77:95; Restatement (Second) of Contracts § 261 cmt. e (1981).

As Plaintiff correctly argues, Defendant admits that its decision to return the $5.5 million in financing was solely under its control. In its statement of Additional Facts, Defendant states that as a result of Boathouse's attempt to renege on its oral waiver of an alleged breach of the Boathouse Agreement, Defendant felt compelled to return the $5.5 million it had received from Boathouse. Thus, it was foreseeable to Defendant at the time it executed its agreements with Plaintiff.

While Defendant did not ultimately receive the benefit of its bargain with Boathouse, this occurrence cannot justify relieving Defendant of its agreement with Plaintiff. Plaintiff performed exactly as Defendant offered in order to receive its commission. Had Defendant desired to make this payment contingent upon the full receipt of the financing funds from Boathouse, it could have, and should have so provided in its email to Plaintiff. It appears to the Court that Defendant's remedy for having to pay Plaintiff a commission for financing it was not able to utilize would arise in its dealings with Boathouse, rather than Plaintiff as Plaintiff was in no way involved in the transactions which resulted in the lack of financing.

## Conclusion

Based upon the foregoing analysis, the Court concludes that Plaintiff is entitled to judgment as a matter of law.

Plaintiff requests attorneys' fees and costs pursuant to the terms of the Release Agreement. Defendant has not stated its position in this regard. The Court will, therefore reserve ruling on Plaintiff's request until such time as Defendant has an opportunity to respond to this request.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, [Doc. No. 20], is **GRANTED**.

**IT IS FURTHER ORDERED** that Judgment will be entered in favor of Plaintiff and against Defendant subsequent to the Court's ruling on Plaintiff's request for attorneys' fees and costs.

**IT IS FURTHER ORDERED** that Defendant is given 10 days from the date of this Opinion to file a response to Plaintiff's request for attorneys' fees and costs.

Dated this 8th day of August, 2011.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE